UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIMAL HEALTHCARE CENTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> U.S. CITIZENSHIP AND IMMIGRATION SERVICES, <br><br> Defendant. | Case No. 25-cv-00945-PCP <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> Re: Dkt. No. 28 |

Plaintiff Animal Healthcare Center, Inc. ("Center") filed this suit against defendant U.S. Citizenship and Immigration Services (USCIS) after USCIS revoked the H1-B petition for a nonimmigrant veterinarian employed by the Center. USCIS now moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the Court grants USCIS's Rule 12(b)(1) motion.

## BACKGROUND

The H1-B program permits certain nonimmigrant foreign workers to come to the United States to temporarily work in a "specialty occupation" "upon the petition of the importing employer." 8 U.S.C. §§ 1101(a)(15)(H)(i)(b); 1184(c)(1). The Center is a veterinary hospital that filed a registration for its intended H-1B beneficiary, veterinarian Dr. Amanat Kaur Suag, in the H-1B lottery for the Fiscal Year 2023 selection process. The registration was selected in the lottery, and the Center subsequently submitted an I-129 petition on behalf of Suag for an employment period from October 1, 2022, to September 30, 2025. The petition was approved in August 2022 and Suag received an H1-B visa to work for the Center.

In July 2024, the Center received a Notice of Intent to Revoke (NOIR) from USCIS. The NOIR informed the Center that it intended to revoke Suag's visa because the Center had allegedly

submitted a false attestation with the registration for Suag's petition. The attestation, which UCSIS requires all parties submitting registrations to complete, states:

> I further certify that this registration (or these registrations) reflects a legitimate job offer and that I, or the organization on whose behalf this registration (or these registrations) is being submitted, *have not worked with, or agreed to work with, another registrant, petitioner, agent, or other individual or entity to submit a registration to unfairly increase chances of selection for the beneficiary or beneficiaries in this submission.*

(emphasis added). The NOIR alleged that the Center's attestation was false because both the Center and other veterinary entities with whom the Center has overlapping leadership and ownership had registered Suag in the FY 2023 lottery in order to unfairly increase Suag's chances. The Center submitted a response to the NOIR arguing that it had acted in compliance with an established exception that permits related entities to submit multiple petitions for the same beneficiary if they can demonstrate a legitimate business need to do so.[1] In October 2024, USCIS revoked the Center's I-129 petition on behalf of Suag with a finding of fraud.

The Center filed this lawsuit in January 2025. It asserts two claims against USCIS under the Administrative Procedure Act, 5 U.S.C §§ 701 *et seq.*, alleging that the revocation of its I-129 petition (1) was based on an unlawful legislative rule and (2) was arbitrary and capricious. USCIS now moves to dismiss for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

## LEGAL STANDARD

A complaint that fails to establish a federal court's subject matter jurisdiction may be dismissed pursuant to Rule 12(b)(1). An attack on jurisdiction "can either be facial, confining the

---

[1] In both the administrative proceedings and before this Court, USCIS takes the position that the exception recognized at 8 C.F.R. § 214.2(h)(2)(G) and in BIA opinions allows related entities to submit multiple *petitions* based on a legitimate business need but does not permit the filing of multiple *registrations*. Because any petition can only be filed after a corresponding registration has been selected in the lottery, USCIS's position would appear to effectively eliminate the existing regulatory exception permitting multiple petitions on behalf of the same beneficiary under certain circumstances. Because the Court concludes that the Center lacks standing to pursue its claims, however, the Court need not (and indeed cannot) consider the merits of the Center's contention that USCIS's position is contrary to law.

inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). A factual Rule 12(b)(1) motion can attack "the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in doing so rely on affidavits or any other evidence properly brought before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

A "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). To establish standing in federal court, Article III of the Constitution requires a plaintiff to demonstrate "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). If the plaintiff's claim is one for which the court can offer no remedy, "there is no case or controversy for the federal court to resolve." *Id.* at 423 (citation omitted).

## ANALYSIS

The Center argues that it has Article III standing based on two alleged injuries: (1) its loss of Suag's employment following the revocation of the petition; and (2) USCIS's finding, in revoking the petition, that the Center had committed fraud. USCIS contends that neither is sufficient to establish standing here. The Court agrees.

First, the Center's loss of Suag's employment is not a redressable injury because the relief requested—an order directing USCIS to reopen the revoked I-129 petition—is now moot. The Center's allegations and USCIS's undisputed evidence indicate that the Center sought to employ Suag through September 2025. But in the time since the revocation of the Center's petition, USCIS approved a separate nonparty's petition to employ Suag beginning in October 2025. Reopening the Center's petition on behalf of Suag, then, would not redress its loss of Suag's employment or facilitate her reinstatement. The petition would no longer authorize her employment by the Center, and she is now employed elsewhere.

Second, the prospect of future harm to the Center resulting from UCSIS's fraud finding is too speculative to establish Article III standing. Whether that fraud finding constitutes "an

United States District Court
Northern District of California

invasion of a legally protected interest" that could be redressed through judicial relief, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), depends upon whether it will cause future harm to the Center. The Center argues that the finding exposes it to harms including increased scrutiny in the registration and petition process, the likely denial of its future petitions, and civil or criminal sanctions. Because these alleged injuries are not actual or imminent, however, they cannot establish the Center's standing here.

The Center contends that it "will file more petitions in the future," and that because USCIS tracks and considers past findings of fraud like that included in the Center's NOIR, "all these petitions will face stricter scrutiny, evidentiary requirements, additional Requests for Evidence or Notices of Intent to Deny, and possible denials." The Center points to various USCIS and DHS websites in support of its argument.[2] USCIS, however, has introduced unrebutted evidence showing "that, on February 3, 2025, USCIS approved an H-1B petition that [the Center] filed on behalf of a different nonimmigrant worker." Although this most recent approval standing alone does not establish that USCIS "has not imposed any heightened scrutiny or adverse consequence in [the Center]'s other filings," it undermines any claim that the kind of future harm alleged by the Center is reasonably likely to occur. Absent further evidence, any harm the Center might suffer as a result of USCIS's increased scrutiny is too speculative to establish Article III standing.

The contention that the Center will face civil or criminal sanctions as a result of USCIS's fraud finding is also overly speculative in the absence of evidence showing a genuine threat of imminent prosecution. *See Washington Mercantile Ass'n v. Williams*, 733 F.2d 687, 688 (9th Cir. 1984). "In evaluating the genuineness of a claimed threat of prosecution, [federal courts] look to whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings,

---

[2] Two of the sources cited by the Center do not appear applicable. One publication is a privacy impact assessment for software called ATLAS. Dkt. 29, at 11 n.2. It is not apparent from the publication whether the ATLAS software is currently in use. Another is a report concerning the process "for identifying and resolving derogatory information for individuals evacuated from Afghanistan and paroled into the United States under Operation Allies Welcome." Dkt. 29, at 12 n.4. There is no allegation that Suag or and of the Center's future intended beneficiaries are part of that program.

United States District Court
Northern District of California

and the history of past prosecution or enforcement under the challenged statute." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). Here, the Center does not identify any specific warning or threat to initiate proceedings that has been made by USCIS or any other entity. Instead, the Center cites USCIS's website, which states that it "may … refer the individual or entity who submitted a false attestation to appropriate federal law enforcement agencies for investigation and further action, as appropriate." The same website states that, "[b]ased on evidence from the FY 2023 and FY 2024 H-1B cap seasons, [USCIS has] undertaken extensive fraud investigations, denied and revoked petitions accordingly, and continue[d] to make law enforcement referrals for criminal prosecution."

While the website may be sufficient to establish that *some* entities found to have submitted fraudulent registrations will be referred to law enforcement authorities, it does not involve the kind of "specific warning or threat" sufficient to establish that *the Center* is likely to face further criminal or civil sanctions. *See Thomas*, 220 F.3d at 1139. Likewise, in the absence of any evidence that USCIS has referred the Center to the relevant authorities for prosecution, that other similarly-situated entities have faced civil or criminal sanctions in the past, or that USCIS does not limit such referrals to the most egregious examples of fraudulent conduct, the website's statements do not establish a "history of past prosecution or enforcement" that could help the Center establish a genuine threat of future prosecution. *See id.* Indeed, given the Center's seemingly good-faith belief that its conduct was permissible under an existing regulatory exemption, it seems unlikely that the government would pursue such a claim.

In short, the allegations of the existing complaint and the evidence before the Court are not sufficient to establish that the finding of fraud, standing alone, exposes the Center to a reasonable likelihood of future injury. The relief the Center requests—an order requiring USCIS to reopen its petition and revisit that finding—would therefore not redress any Article III injury. As a result, the fraud finding cannot establish the Center's standing to pursue this lawsuit.

## CONCLUSION

For the foregoing reasons, the Center lacks Article III standing to pursue the claims for prospective relief asserted in its lawsuit. Because those are the only forms of relief the Center

seeks, the Court grants USCIS's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. In the absence of a basis for exercising its jurisdiction, the Court will not address USCIS's Rule 12(b)(6) motion. The Center is granted leave to file an amended complaint by March 10, 2026. Failure to timely file an amended complaint will result in dismissal of the case.

**IT IS SO ORDERED.**

Dated: February 10, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California